**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CATHY J. BIVENS, ) | CASE NO. 5:12-CV-1906 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, Cathy J. Bivens ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying her applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

### I.  PROCEDURAL HISTORY

On March 26, 2009, Plaintiff filed her application for SSI, alleging a disability onset date of March 17, 2009.  (Transcript ("Tr.") 17.)  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On November 3, 2010, an ALJ held Plaintiff's hearing.  (*Id*.)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id*..)  A vocational expert ("VE") also participated and testified.  (*Id*.)  On November 12, 2010, the ALJ found Plaintiff not disabled.  (Tr. 31.)  On May 31, 2012,

the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On July 24, 2012, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 15, 16, 17.)  Plaintiff argues that the ALJ's determination of her residual functional capacity ("RFC") is not supported by substantial evidence because he improperly assessed her credibility and failed to adopt her testimony regarding her physical limitations.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born on December 13,1950, and was 59 years old on the date of her administrative hearing.  (Tr. 34.)  She completed high school and could communicate in English.  (Tr. 36.)  Plaintiff last worked as a bank teller in the 1970's.  (*Id*.)

### B.  Medical Evidence

On February 9, 2008, Plaintiff was examined by a physician at Cuyahoga Falls General Hospital Primary Care and Specialty Center, who noted that Plaintiff was "upset, crying" during the exam.  (Tr. 185.)  She reported a history of tobacco use, diabetes and obstructive sleep apnea, and the physician diagnosed her with depression, anxiety and hypertension.  (*Id*.)  He prescribed Metformin, Lorazepam and Primvil, and instructed Plaintiff to use a CPAP machine and to stop smoking.  (*Id*.)  On July 21, 2008, Plaintiff reported a history of anxiety, depression, hypertension, diabetes,

chronic fatigue, mitral valve prolapse, daytime sleepiness and snoring.  (Tr. 196.)

On February 18, 2009, Plaintiff underwent an initial psychiatric evaluation at Portage Path Behavioral Health ("Portage Path").  (Tr. 225-29.)  She reported experiencing depression since her childhood and anxiety since she was a teenager.  (Tr. 225).  According to Plaintiff, she was experiencing: crying spells; irritability; anxiety; decreased appetite, energy and motivation; problems thinking, concentrating and remembering; feelings of helplessness and hopelessness; and a desire for death.  (Tr. 225.)  Her anxiety kept her from sleeping.  (*Id.*)  The physician noted that Plaintiff was well groomed, with average eye contact and activity and clear speech.  (Tr. 227.)  The physician diagnosed Plaintiff with major depressive disorder and generalized anxiety disorder.  (Tr. 228.)

Throughout her treatment at Portage Path, Plaintiff reported feeling depressed, anxious, hopeless and helpless.  (Tr. 230, 233, 239, 254.)  She was occasionally tearful or histrionic.  (Tr. 233, 239.)  Staff observed that Plaintiff had "very little insight, is not very motivated," and was "very dependent, which is seemingly feeding into her depression." (Tr. 254.)  On one occasion, a therapist suggested that Plaintiff, who identified her financial condition as a major source of stress, improve her finances by working a "low stress job or babysitting for her son's children."  (Tr. 245.)  One counselor observed that Plaintiff "feels she is incapable of doing anything to help herself at this point is very defensive when suggestions are made in terms of behavioral changes necessary to improve her depression."  (Tr. 253.)    On May 26, 2009, Plaintiff underwent an evaluation performed by Vintal B. Patel, M.D.  (Tr. 202-08.)  Dr. Patel noted that Plaintiff was "slightly emotional and crying and I had to console her."  (Tr.

3

203.) Plaintiff reported smoking two packs of cigarettes per day. (Tr. 202.) Plaintiff stated that she lived alone in an apartment, and could perform her activities of daily living but "gets so depressed at times she doesn't want to even take care of herself." (*Id*.) Plaintiff complained that "her depression is physically wearing her out," and that "she doesn't care if she dies – she's to that point." (*Id*.) Dr. Patel opined that Plaintiff "would benefit from greater access to medical care," noting that she could not afford the testing strips necessary to monitor her diabetes. (Tr. 203.) He concluded that she had moderate-to-severe depression. (*Id*.)

In December 2009, a counselor at Portage Path "gently challenged [Plaintiff's] plans for future and reasons for not working or pursuing employment," and noted that, while Plaintiff "believed she is doing better as a result of [treatment] thus far, she is firmly opposed to suggestion of any work whatsoever, believing she has a mental condition which precludes her from ANY employment of ANY kind. [Plaintiff] repeatedly stated that she does not want to work nor does she like working and remains unreceptive/unmotivated." (Tr. 333.) In February 2010, Plaintiff reported that she was feeling a little better after receiving Medicaid and being able to attend her medical appointments. (Tr. 323.) She was performing community service in return for her public housing by "helping her ex-in laws." (*Id*.) The counselor asked Plaintiff to consider "home health work," and Plaintiff responded that "she would not be able to do a job consistently." (Tr. 323). Throughout 2010, Plaintiff reported feeling "sedentary" and "not motivated." (Tr. 310.) She complained of stress and depression related to the failing health – and eventual deaths – of her boyfriend and her dog. (Tr. 310, 312, 315.)

4

An October 26, 2010 nerve conduction study, performed after Plaintiff complained of numbness in her left foot, revealed "evidence of a mild, axonal peripheral neuropathy." (Tr. 360.)

**C.     Agency Reports**

On May 27, 2009, agency consultant Catherine Flynn, Psy. D., performed a psychiatric review technique. (Tr. 209-22.) Dr. Flynn diagnosed Plaintiff with major depressive disorder and general anxiety disorder. (Tr. 212, 214.) Dr. Flynn opined that Plaintiff was mildly limited in activities of daily living; maintaining social functioning; and maintaining concentration, persistence and pace. (Tr. 219.) In her notes, Dr. Flynn observed that Plaintiff had previously applied for benefits, and her application had been denied in March 2009. (Tr. 221.) Dr. Flynn opined that Plaintiff was only "partially credible, and not credible for severity," based on inconsistencies between Plaintiff's statements regarding her limitations and what Plaintiff actually managed to do. (*Id*.)

On September 23, 2009, Plaintiff reported to an agency representative that her depression had grown worse, and that "she stays in bed most of the day" with "frequent crying spells." (Tr. 223.) Plaintiff claimed that she was not able to do any cleaning, but would cook "if she has food." (*Id*.) On September 24, 2009, agency consultant Tasneem Khan, Ed.D., performed a mental RFC assessment, and adopted the RFC from the decision in Plaintiff's prior case, noting that the Plaintiff "is limited to unskilled work involving only simple, repetitive tasks, and no more than routine changes in the workplace. She is limited to low stress work, that is, work that does not involve high production quotas." (Tr. 274.) Dr. Khan also performed a psychiatric review technique on that date, diagnosing Plaintiff with depressive disorder and anxiety disorder (Tr. 279,

5

281), and finding that Plaintiff was: mildly limited in her activities of daily living and maintaining social functioning; and moderately limited in maintaining concentration, persistence and pace (Tr. 286).

In a December 11, 2009 physical RFC assessment, agency consultant Paul Morton, M.D., opined that Plaintiff should: never balance; avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation; and avoid all exposure to hazards. (Tr. 293, 295.)

**D.  Hearing Testimony**

    **1.  Plaintiff's Hearing Testimony**

At her November 3, 2010 administrative hearing, Plaintiff testified as follows:

Plaintiff had a driver's license, but did not drive because her car needed brakes. (Tr. 35.)  When she did drive, she avoided freeways because they made her "panicky." (*Id*.)  She could not sit for long periods of time because her legs and toes went numb when she did so.  (Tr. 38.)  Plaintiff was not able to stand for more than 15 minutes because her left foot would begin to hurt.  (Tr. 38, 44.)  Plaintiff felt that she was "constantly sleepy" because of her sleep apnea, which caused her to wake up very early and require sleep a few hours later.  (Tr. 38-39.)  She also was unable to sleep because her mind "just won't shut down."  (Tr. 39.)  Plaintiff napped one or two times each day.  (*Id*.)  When she did sleep, she slept for four hours at a time.  (Tr. 48.)

Plaintiff experienced feelings of anxiety, which she described as "feel[ing] like you're going to have a heart attack or something."  (Tr. 40.)  She was able to resolve the feeling by opening her refrigerator and sticking her head in it, as the cold air

6

seemed to help.  (*Id.*)  In addition to driving, other situations that provoked Plaintiff's anxiety included going to the grocery store, "doing too much at one time," and "noise and everything, people talking to me."  (Tr. 41.)  Plaintiff cried daily for no particular reason.  (*Id.*)  Plaintiff experienced memory problems, and had difficulty maintaining focus to follow the plot of a movie.  (Tr. 42-43.)

Plaintiff felt that she could walk less than a city block without having to stop because of difficulty breathing and pain and numbness in her toes.  (Tr. 43-44.)  She experienced frequent numbness and tingling in her fingertips.  (Tr. 46-47.)  Plaintiff presumed she could lift 10 pounds frequently, but 20 only occasionally and never above shoulder level.  (Tr. 47.)

When she was unable to sleep, Plaintiff could not remain in bed very long because her "body starts hurting" and she grew lightheaded.  (Tr.  48.)  Her morning routine was generally starting coffee, reading the newspaper online, checking her e-mail and looking at Facebook.  (Tr. 49.)  She had to switch positions and chairs throughout the day because she was "not comfortable."  (*Id.*)  She performed light cleaning once per month, and grocery shopped and did laundry every couple of weeks.  (Tr. 50.)  Sometimes, she went days without leaving her apartment because she had no desire to go anywhere or see anybody.  (Tr. 51.)

### 2. Vocational Expert's Hearing Testimony

The ALJ gave the VE the following hypothetical:

> Assume a person of advanced age . . . with a high school
> and above education . . . who has no past work experience.
> Assume this person can perform work at all exertional levels,
> but must avoid high concentrations of dust, odors, fumes,
> gases, and tobacco smoke, and must avoid heights and

7

> dangerous machinery. Further assume that this individual is
> limited to unskilled work involving only simple, repetitive
> tasks, and to work involving no more than routine changes in
> the workplace. Assume this individual is limited to low stress
> work that does not involve high production quotas.

(Tr. 57-58.) The VE opined that the hypothetical individual could perform work as an unskilled food service worker, such as a dining room, cafeteria or counter attendant; a wire worker; an assembler; or an unskilled inspector, tester or examiner of molded parts. (Tr. 58-59.)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that

8

"significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. Plaintiff has not engaged in substantial gainful activity since March 26, 2009, the application date.

2. Plaintiff has the following severe impairments: diabetes mellitus with neuropathy, obesity, sleep apnea, depression and anxiety.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff must avoid even moderate concentrations of dust, odors, fumes, gases and tobacco smoke. Likewise, Plaintiff must avoid heights and dangerous machinery. In addition, Plaintiff is limited to unskilled work involving only simple, repetitive tasks and work involving no more than routine changes in the workplace. Lastly, Plaintiff is limited to low-stress work that does not involve high production quotas.

5.  Plaintiff has no past relevant work.

6.  Plaintiff was born on December 13, 1950 and was 58 years old, which is defined as an individual of advanced age, on the date the application was filed.

7.  Plaintiff has at least a high school education and is able to communicate in English.

8.  Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9.  Considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Act, since March 26, 2009, the date the application was filed.

(Tr. 18-25.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard,* 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy,* 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

Plaintiff argues that the ALJ erred in finding her not credible, and that substantial evidence does not support the ALJ's calculation of Plaintiff's RFC. This Court considers each argument in turn.

**1.  Whether the ALJ Erred in Assessing Plaintiff's Credibility**

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983). The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's

allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.).  Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight."  *Id.*

In his decision, the ALJ concluded that Plaintiff was not credible with respect to the severity of her symptoms.  (Tr. 23-24.)  In addition to noting the lack of subjective evidence supporting her allegations of disability, the ALJ also pointed to inconsistencies between Plaintiff's claim that she was totally disabled and her testimony and other evidence regarding her activities.  (Tr. 23.)  For example, the ALJ noted that Plaintiff's testimony that she made her own meals, cleaned her house, washed dishes, did laundry, and used Facebook and e-mail.  (Tr. 23.)  He observed that Plaintiff's "daily activities [were] not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  (*Id*.)  The ALJ pointed to the inconsistencies between Plaintiff's various statements regarding her activities, noting that, at one point, she had reported not cleaning her house to an agency representative, whereas she had testified that she cleaned her house once each month.  (Tr. 24.)  He also noted her testimony that she got out of bed regularly given her inability to sleep, which contradicted an earlier statement to an agency representative that she could not get out of bed because of her depression.  (*Id*.)  Finally, the ALJ pointed to Plaintiff's failure to follow the advice of her physicians and counselors to quit smoking and start exercising, observing that "this suggests that the symptoms may not have been as serious as

12

alleged in connection with this application and appeal." (*Id.*)

Plaintiff argues that the ALJ's assessment of Plaintiff's credibility is not reasonable because he failed to recognize the consistency of Plaintiff's statements throughout the record. Plaintiff notes that the record reflects that she consistently complained of depression, a lack of motivation, and anxiety, and that Plaintiff was tearful and sad. Plaintiff's argument, however, is not well taken. Although Plaintiff's complaints to her medical providers were fairly uniform, the inconsistencies identified by the ALJ are present in the transcript. For example, there is no objective evidence in support of Plaintiff's allegations of total disability. Indeed, her counselors at Portage Path suggested multiple times that Plaintiff could improve her condition by working at a low stress job. Further, Plaintiff's testimony regarding her daily activities contradicted her statements to agency representatives that she was not able to clean her house, and that her depression kept her in bed. Finally, the ALJ was correct in observing that Plaintiff did not follow the advice of her physicians regarding her smoking and lack of exercise.

Plaintiff cites to *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007), to support her argument. In that case, the Sixth Circuit reversed the district court's decision affirming the denial of the plaintiff's benefits. Among other things, the Sixth Circuit rejected the district court's conclusion that the ALJ had properly assessed the plaintiff's credibility, which was based, in part, on the plaintiff's activity level. The Sixth Circuit observed that the "somewhat minimal daily functions" described by the plaintiff were not "comparable to typical work activities." 486 F.3d at 248. The Sixth Circuit also noted that the ALJ had "mischaracterize[d]" the plaintiff's testimony, and failed to

13

"examine the physical effects coextensive to their performance." *Id*. at 248-49.

*Rogers* does not compel remand in this case. Although the ALJ focused, in part, on the level of Plaintiff's daily activity, he did so to note its contradiction with her allegations that she was totally disabled. Further, even if the ALJ erred in equating Plaintiff's daily activities with an ability to work – which is not suggested by his opinion – he also relied on inconsistencies between her prior statements and her hearing testimony, as well as on her failure to comply with her physicians' advice and the lack of objective medical evidence supporting Plaintiff's allegations that she was not able to work.

Plaintiff also cites to *Cohen v. Comm'r of Soc. Sec.*, 964 F.2d 524 (6th Cir. 1992). In that case, in affirming the denial of the plaintiff's application for benefits, the district court noted that, after Plaintiff stopped working due to her chronic fatigue syndrome, she had continued ballroom dancing, founded a chronic fatigue support group, and completed some law school courses. The ALJ determined that the plaintiff's level of activity substantially undermined her credibility, and suggested that she was able to perform her past relevant work as an assistant to a university administrator. The Sixth Circuit rejected this reasoning, noting that the ALJ had failed to consider the details of the plaintiff's activities, noting, for example, that the plaintiff had steadily decreased the amount of time she spent ballroom dancing as her condition progressed because she required increasing time to recover from a few hours of dancing, that she had attended law school courses on a part time basis, completing only six credit hours per semester, and that the plaintiff's participation in the support group consisted of spending a few hours each week on the phone talking to other individuals with the

condition.  964 F.2d at 530-31.

*Cohen* does not require remand.  Unlike the ALJ in that case, the ALJ in this case did not mischaracterize the details of Plaintiff's daily activities.  He also cited to reasons other than her level of activity to find Plaintiff not credible.   Accordingly, and because substantial evidence in the record supports the ALJ's reasons for finding Plaintiff not credible with respect to the severity of her symptoms, Plaintiff is not entitled to remand on this issue.[1]

### 2. Whether Substantial Evidence Supports the ALJ's Formulation of Plaintiff's RFC

Plaintiff argues that substantial evidence does not support the ALJ's conclusion that she could perform work at all exertional levels.  She points to her testimony regarding her inability to sit or stand for long periods of time, or to lift more than 10 pounds frequently and 20 pounds occasionally.  Plaintiff's argument lacks merit.  Substantial evidence supports the ALJ's conclusion that Plaintiff was capable of working at all exertional levels.  The agency's consulting physician, Dr. Morton, did not assign Plaintiff any exertional limitations.  Nor did any of Plaintiff's treating providers.  Further, the ALJ did not err in relying on the objective medical evidence to calculate

---

[1] The Commissioner argues that Plaintiff lacked credibility in part because, despite her claims that she could not afford medication, she continued to smoke two packs of cigarettes each day.  (Commissioner's Brief ("Comm. Br.") at 6, 11.)  Although the record does suggest this to be the case, the ALJ did not articulate this as a basis for his credibility determination.  It is well established that "the courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 50 (1983) (citation omitted)).

Plaintiff's RFC, particularly given that he found her not credible with respect to the severity of her symptoms.  *See* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.") Accordingly, substantial evidence supports the ALJ's calculation of Plaintiff's RFC.

## VI.  CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: March 5, 2013